**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 1, 2004**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                No. 118021

ERIC BOYD,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, C.J.

In this case, we consider whether a defendant must testify in order to preserve for appellate review a challenge to a trial court's ruling in limine allowing evidence that the defendant exercised his *Miranda*[1] right to remain silent. In *Luce v United States*, 469 US 38, 43; 105 S Ct 460; 83 L Ed 2d 443 (1984), the United States Supreme Court held that a defendant must testify to preserve for appeal a challenge to a ruling in limine involving

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

impeachment with prior convictions. We adopted the *Luce* rule in *People v Finley*, 431 Mich 506; 431 NW2d 19 (1988) (opinions by RILEY, C.J., and by BRICKLEY, J., concurring in part),[2] which also involved impeachment by prior convictions.

Because the same reasons for requiring a defendant to testify to preserve a challenge to pretrial evidentiary rulings in *Luce* and *Finley* apply in the circumstances of this case, we extend the rule from *Luce* and *Finley* to the errors alleged here. We hold that defendant was required to testify to preserve for review his challenge to the trial court's ruling in limine allowing the prosecutor to admit evidence of defendant's exercise of his *Miranda* right to remain silent. Because the statement at issue in this case would have been properly admissible in one context, defendant's failure to testify precludes us from being able

---

[2] Despite the dissent's contention that we mischaracterize the holding of the *Finley* Court, *post* at 1-3, a majority of this Court in *Finley* adopted the rule announced in *Luce*. Justices BOYLE and GRIFFIN joined Chief Justice RILEY's lead opinion, and Justice BRICKLEY concurred in the lead opinion's adoption of the *Luce* rule, as the dissent correctly recognizes. *Finley, supra* at 526 (opinion by BRICKLEY, J.). Contrary to the dissent's assertion, we do not contend that Justice BRICKLEY agreed with every aspect of the lead opinion, but rather, that he "concurred with the adoption of the rule as defined in *Luce." Post* at 2.

2

to determine whether the trial court's ruling was erroneous and, if so, whether the error requires reversal. We thus affirm the judgment of the Court of Appeals holding that defendant was required to testify to preserve his challenge for appellate review.

## I. UNDERLYING FACTS AND PROCEDURAL HISTORY

On June 14, 1997, the twelve-year-old victim attended a barbeque at a neighbor's apartment in the building where defendant lived. The victim testified that defendant grabbed her at the barbeque, took her to his apartment, and had sexual intercourse with her. She told her friend, an eleven-year-old girl, about the assault immediately thereafter, but did not tell her father about it until a week later. Her father then called the police and took her for a medical examination. The results of the examination were inconclusive regarding penetration because of the interval between the alleged penetration and the examination.

Police arrested defendant shortly after the victim's father reported the incident. Defendant furnished a statement to police after being advised of his *Miranda* rights. After defendant answered five or six questions, the police officer asked him, "When you last saw her [the victim], how many times did you have sex with her?"

3

Defendant responded, "I am taking the fifth on that one." The officer immediately ended the interrogation.

The prosecutor charged defendant with first-degree criminal sexual conduct, MCL 750.520b(1)(a) (sexual penetration of victim under thirteen years of age). Immediately before trial, defendant moved in limine to exclude that portion of his statement in which he asserted his *Miranda* right to remain silent. The prosecutor opposed the motion, arguing that the entire statement was admissible. The trial court ruled that defendant's entire statement was admissible.

Despite this ruling, the prosecutor never sought to admit defendant's statement into evidence and did not refer to the statement during opening or closing argument. Defendant elected not to testify, but the record does not reflect the reason for his decision. Defendant's brother testified that defendant had been with him at the apartment at the time of the alleged assault and that no assault occurred. The young female friend of the complainant testified that the victim told her about the assault immediately after it had occurred. The friend also testified that the victim was crying, her clothes were "messed up," and she was missing a pair of shorts.

The jury convicted defendant of second-degree criminal sexual conduct, MCL 750.520c, and the trial court sentenced him to a ten- to fifteen-year term of imprisonment.

The Court of Appeals affirmed.[3] Defendant argued, inter alia, that his decision not to testify at trial was based on the trial court's erroneous ruling in limine allowing the prosecutor to use the assertion of his *Miranda* right to remain silent against him. The Court of Appeals agreed that the trial court's ruling was erroneous, but, citing *Finley*, held that reversal was not required because defendant did not testify and the evidence was never admitted. The Court declined to assume that defendant chose not to testify "out of fear of impeachment." It also concluded that the evidence against defendant was overwhelming and that any error was harmless beyond a reasonable doubt.

We granted defendant's application for leave to appeal.[4]

---

[3] Unpublished opinion per curiam, issued September 15, 2000 (Docket No. 214097).

[4] 467 Mich 920 (2002).

5

## II. STANDARD OF REVIEW

This case requires us to determine whether a defendant must testify in order to preserve for appellate review a challenge to a ruling in limine allowing admission of his exercise of his silence. We review de novo this question of law. *People v Mendoza*, 468 Mich 527, 531; 664 NW2d 685 (2003).

## III. ANALYSIS

### A. *Luce* and *Finley*

In circumstances analogous to the instant factual scenario, the United States Supreme Court held that a defendant must testify to preserve for appeal the issue of improper impeachment by prior convictions. *Luce, supra* at 43. In *Luce*, the petitioner sought to preclude the use of a prior conviction to impeach his testimony. The trial court ruled that the prior conviction was admissible under FRE 609(a). The petitioner did not testify and was convicted. *Luce, supra* at 39-40.

The Supreme Court upheld the convictions, citing numerous reasons for requiring the petitioner to testify to preserve his challenge to the pretrial evidentiary ruling. First, the Court reasoned that if the petitioner had testified and been impeached with the prior conviction, the trial court's decision admitting the evidence would have

6

been reviewable on appeal. *Id*. at 41. The Court recognized the difficulty inherent in reviewing an evidentiary ruling outside a factual context, particularly because FRE 609(a)(1) required a reviewing court to weigh the probative value of a prior conviction against its prejudicial effect. To perform this balancing test, the Court opined, a reviewing court must know the precise nature of the defendant's testimony, which is unknown unless he testifies. *Luce, supra* at 41. The Court rejected the notion that an offer of proof would be sufficient because a defendant's trial testimony could differ from the proffer. *Id*. at n 5.

Second, the Court recognized that any possible harm from a trial court's ruling in limine allowing impeachment with prior convictions is wholly speculative in the absence of the defendant's testimony. The Court opined that such a ruling is subject to change depending on how the case unfolds at trial and that a court, exercising sound judicial discretion, could modify a previous ruling in limine. The Court also stated that without a defendant's testimony, a reviewing court has no way of knowing whether the prosecutor would have sought to introduce the prior conviction for impeachment. For example, if the prosecutor's case is strong and other means of impeachment

7

are available, the prosecutor may choose not to use an arguably inadmissible prior conviction. *Id*. at 41-42.

Third, the Court reasoned that appellate courts cannot assume that an adverse pretrial ruling motivated a defendant's decision not to testify. The Court rejected the notion that a defendant could commit to testifying if his motion is granted because such a commitment is relatively risk-free and difficult to enforce. *Id*. at 42.

In addition, the Court acknowledged the problem involving application of a harmless error analysis because "the appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying." *Id*. Thus, nearly every error would automatically require reversal. Finally, the Court opined that requiring defendants to testify enables reviewing courts to assess the effect of any erroneous impeachment in light of the entire record and tends to discourage gamesmanship whereby a defendant's motion operates solely to "plant" error requiring reversal on appeal. *Id*.

In *Finley,* a majority of this Court adopted the *Luce* rule. We observed that the purpose of the rule is to provide for meaningful appellate review of a ruling in limine allowing impeachment by prior convictions. *Finley, supra* at 512 (opinion of Riley, C.J.). The lead opinion

stated that "error does not occur until error occurs; that is, until the evidence is admitted." *Id*. It further stated that even if an offer of proof is made and evidence is erroneously deemed admissible, error requiring reversal does not arise until the evidence is actually introduced. The lead opinion then reiterated the reasons stated in *Luce* favoring the rule requiring a defendant's testimony to preserve the issue for appellate review. *Id*. at 512-513.

### B. Extension of the *Luce* and *Finley* Rule

Many courts have extended the rule announced in *Luce* and adopted in *Finley* to contexts other than those involving impeachment by prior convictions.[5] In *United*

---

[5] Many of these cases involve federal rules of evidence other than FRE 609(a), the rule at issue in *Luce*. See, e.g., *United States v Sanderson*, 966 F2d 184, 190 (CA 6, 1992) ("[A]n appeal of a Rule 608(b) ruling is precluded where the defendant did not testify at trial."); *United States v Ortiz*, 857 F2d 900, 906 (CA 2, 1988) (the defendant waived his challenge to the trial court's adverse ruling in limine on Rule 404(b) motion by failing to insist on right to fully present "personal use" argument at trial); *United States v Griffin*, 818 F2d 97, 103-105 (CA 1, 1987) ("[T]o raise and preserve for review the claim of improperly constructing the Rule 403 balance, a party must obtain the order admitting or excluding the controversial evidence in the actual setting of the trial" and may not rely on a trial court's mere ruling in limine.); *United States v Weichert*, 783 F2d 23, 25 (CA 2, 1986) (By failing to testify at trial, challenge to the trial court's ruling in limine under Rule 608(b) was not preserved for review.); *United States v Johnson*, 767 F2d 1259, 1270 (CA 8, 1985) ("Although *Luce* was decided under Fed. R. Evid. 609(a)(1), Footnotes continued on following page.

its logic applies with equal force to motions under Rule 404.").

In addition, the dissent cites Professor Duane for the proposition that the United States Supreme Court has been "reluctant to give *Luce* any precedential value," *post* at 11. To the contrary, the Court has rather recently accorded such value to *Luce* in *Ohler v United States*, 529 US 753, 759; 120 S Ct 1851; 146 L Ed 2d 826 (2000), a case in which the Court held that once a defendant—not the government—introduces evidence of a prior conviction, the defendant waives any right to appeal the trial court's ruling in limine permitting the government to admit that conviction for purposes of impeachment. Moreover, although four justices dissented, concluding that *Luce* was inapplicable because the defendant had testified and thus the harm was not "wholly speculative," *Luce, supra* at 41, those justices also appeared implicitly to recognize the importance of *Luce*:

> An appellate court can neither determine why a defendant refused to testify, nor compare the actual trial with the one that would have occurred if the accused had taken the stand. With unavoidable uncertainty about whether and how much the *in limine* ruling harmed the defendant, and whether it affected the trial at all, a rule allowing a silent defendant to appeal would require courts either to attempt wholly speculative harmless-error analysis, or to grant new trials to some defendants who were not harmed by the ruling, and to some who never even intended to testify. *Ohler, supra* at 760-761. (Souter, J., dissenting).

Although the dissent states that the United States Supreme Court in *Ohler* "begrudgingly" cited *Luce*, *post* at 14, nothing in *Ohler*'s majority or dissenting opinion supports that assertion. Further, our reliance on *Ohler* is not "misplaced." *Post* at 14. Neither the majority nor the dissent in *Ohler* questioned *Luce*'s continuing validity. Rather, the Court decided that *Luce* was inapplicable. *Ohler* simply does not state that the United States Supreme Court has been reluctant to accord *Luce* precedential effect.

*States v Wilson*, 307 F3d 596, 598 (CA 7, 2002), the defendant moved in limine to preclude the prosecutor from introducing evidence of his postarrest "selective silence." After waiving his *Miranda* rights, the defendant answered a series of questions, but expressly refused to provide the name of his associate. *Id.* The trial court granted the motion in part, ruling that the prosecution could not use the defendant's silence against him in its case-in-chief. During trial, the defendant sought to admit evidence regarding the associate, but the court ruled that if defendant raised the matter, the prosecutor would be permitted to introduce evidence of the defendant's refusal to name the associate during questioning. The defendant opted not to raise the issue. *Id*. at 598-600.

On appeal, the defendant argued that the trial court's ruling allowing the prosecutor to introduce evidence of his "selective silence" violated his Fifth Amendment privilege against self-incrimination. *Id*. at 599. Relying on *Luce* and the line of cases extending the *Luce* holding beyond FRE 609, the court declined to review the defendant's claim on the merits. The court stated that because the defendant exercised his right to refrain from introducing certain evidence at trial, he "cannot now attack a potential

11

introduction of evidence by the government in response to his potential testimony." *Id*. at 601.

United States v Bond, 87 F3d 695 (CA 5, 1996), also involved a defendant's Fifth Amendment privilege against self-incrimination. In that case, the defendant challenged the magistrate's ruling that if he testified regarding the terms of a plea bargain, he would waive his privilege against self-incrimination regarding all grounds asserted in his motion to withdraw his guilty plea. The appellate court determined that the same practical considerations as in *Luce* were present, including the difficulty inherent in determining whether the defendant's testimony could be limited in accordance with his motion without actually hearing the testimony. The court recognized that other courts have refused to limit the *Luce* rule to Rule 609(a) situations and have instead applied the *Luce* rule in analogous contexts. *Id*. at 700-701.

### C. Application of the *Luce* Rule to the Facts in this Case

As in *Wilson* and *Bond*, we must determine here whether to extend the *Luce* rule to defendant's invocation of his *Miranda* right to remain silent. Defendant and the dissent contend that the logic of *Luce* and *Finley* does not apply because the alleged error has constitutional implications.

12

The alleged errors in *Wilson* and *Bond*, however, also had constitutional implications. In fact, the purported errors in those cases involved the same constitutional right at issue in this case, i.e., the Fifth Amendment privilege against self-incrimination.

The dissent and defendant further fail to appreciate the constitutional implications present in *Luce*, *Finley*, and every case in which a defendant alleges that a trial court's ruling effectively prevented him from testifying. A defendant's right to testify in his own defense stems from the Fifth, Sixth, and Fourteenth amendments of the United States Constitution. *Rock v Arkansas*, 483 US 44, 51-52; 107 S Ct 2704; 97 L Ed 2d 37 (1987). Thus, a trial court's ruling affecting a defendant's right to testify necessarily has constitutional implications.[6] The lead opinion in *Finley* correctly stated, "A ruling in limine on impeachment by prior convictions does not present constitutional implications." *Finley, supra* at 514. The effect of such a ruling on a defendant's right to testify, however, does present constitutional implications.

---

[6] While the United States Supreme Court did not decide *Rock* until after it decided *Luce*, its decision in *Rock* made clear that a defendant's challenge involving his right to testify in his own defense is one of constitutional magnitude.

Therefore, the distinction that the dissent attempts to draw between this case and *Finley* is illusory. Any ruling, even if on a mere evidentiary issue, necessarily affects a defendant's constitutional rights if it has a chilling effect on the exercise of the right to testify.

Defendant further asserts that, because his invocation of his *Miranda* right to remain silent could *never* be admitted at trial, the trial court's ruling in limine that his statement was admissible constituted error that could never be harmless. Defendant's argument is premised on the erroneous assumption that his invocation of his privilege against self-incrimination could *never* be admissible. Under *Doyle v Ohio,* 426 US 610, 619; 96 S Ct 2240; 49 L Ed 2d 91 (1976), and *People v Bobo*, 390 Mich 355, 359; 212 NW2d 190 (1973), however, defendant's "taking the fifth" statement would have been properly admissible in one context. The United States Supreme Court held in *Doyle, supra* at 619, "that the use for impeachment purposes of petitioners' silence at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." The Court recognized, however, that "the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to

14

have told the police the same version upon arrest."  *Id*. at 619 n 11.

Similarly, in *Bobo*, this Court held that the prosecution could not introduce a defendant's postarrest silence to impeach his exculpatory testimony at trial. *Bobo, supra* at 359.  We cautioned, however, that this rule was not an absolute ban on the use of post-*Miranda* silence and stated that "[t]he fact that a witness did not make a statement may be shown only to contradict his assertion that he did."[7]  *Id.;* see also *People v Dennis*, 464 Mich 567, 573 n 5; 628 NW2d 502 (2001), citing *Doyle, supra* at 619 n 11.

If defendant had offered exculpatory testimony at trial and claimed to have told his exculpatory story to the police in response to questioning, his silence would have been admissible for impeachment purposes.  As this Court recently stated in *Dennis, Doyle* does not apply where "a defendant testifies to having earlier provided an exculpatory version of events to the police and the prosecution offers evidence of defendant's silence to rebut

---

[7] In *People v Collier*, 426 Mich 23, 39; 393 NW2d 346 (1986), this Court confined *Bobo* "to impeachment for and comment on silence at the time of arrest in the face of accusation."  See also *People v Hackett*, 460 Mich 202, 215 n 6; 596 NW2d 107 (1999).

15

such a claim." *Dennis, supra* at 573 n 5.[8]  Thus, defendant's contention that his "taking the fifth" statement would *never* have been admissible is incorrect.[9] Rather, the statement's admissibility would depend on the context in which the prosecutor had sought to admit it.[10]

Because the admissibility of post-*Miranda* silence depends on the factual setting in which the prosecutor seeks to admit it, we are faced with the same problem encountered in *Luce* and *Finley*, i.e., that defendant's

---

[8] See also *People v Sutton (After Remand)*, 436 Mich 575, 579; 464 NW2d 276 (1990) ("Where a defendant claims that he gave an exculpatory statement to the police after arrest and warnings, neither *Bobo* nor any federal constitutional authority would preclude impeachment with prior inconsistent conduct, including silence.").

[9] We are not presented with a situation in which defendant's statement would *never* have been admissible, and we express no opinion regarding whether a claim of error would be reviewable in that instance absent a defendant's testimony at trial.

[10] For this reason, the dissent's contention that our holding "requires the defendant to choose which constitutional right to give up, his Fifth Amendment right to post-*Miranda* silence or his Fifth Amendment right not to testify," is misleading.  *Post* at 16-17.  Because a defendant may, in a certain circumstance, testify and properly be impeached with his post-*Miranda* silence without offending constitutional protections, he is not necessarily forced to give up either his Fifth Amendment privilege against self-incrimination or his *Miranda* right to remain silent.  In fact, this argument supports the notion that a defendant must testify in order to determine whether any error occurred at all.

16

claim of error is wholly speculative. Not only could the statement have been admitted to contradict a defendant who testified about an exculpatory version of events and claims to have told the police that version upon his arrest, but, as *Luce* suggests, it might not have been admitted at all, even if defendant had testified. As the *Luce* Court recognized, the trial court could have ultimately concluded that the statement was inadmissible, or the prosecution could have changed its trial strategy and not sought to admit the statement.

In addition, as *Luce* recognized, we cannot assume that the possible introduction of the "taking the fifth" statement motivated defendant's decision not to testify. The *Luce* Court rejected the notion that appellate courts can properly discern the effect of a ruling in limine on a defendant's trial strategy. *Luce, supra* at 42. Thus, it is equally possible that defendant simply chose to present his defense through his brother's testimony, which contradicted the complainant's allegations, rather than to testify himself and be subject to cross-examination. Because numerous factors undoubtedly influence a defendant's decision whether to testify, we refuse to speculate regarding what effect, if any, a ruling in limine may have had on this decision.

Defendant cites *State v Lamb,* 84 NC App 569, 580-581; 353 SE2d 857 (1987), quoting *United States v Lipscomb*, 226 US App DC 312, 332; 702 F2d 1049 (1983), for the proposition that "when a defendant seeks an advance ruling on admission of a prior conviction, it is reasonable to presume that the ruling will be an important factor in his decision whether to testify." The *Lamb* court, however, failed to acknowledge that a rule allowing appeals based on evidence contested in limine but never introduced at trial is subject to abuse. For example, a defendant could move in limine to exclude a number of prior statements, all the while never intending to testify. The *Luce* Court recognized this potential for abuse, stating that its rule "will also tend to discourage making [motions] solely to 'plant' [error requiring reversal] in the event of conviction." *Luce, supra* at 42. Thus, we find defendant's reliance on *Lamb* unpersuasive.

Further, unlike the dissent, we appreciate the difficulty inherent in evaluating a trial court's ruling on a motion in limine when the evidence is never actually admitted. The dissent would have us review defendant's claim of error in a vacuum and engage in speculation regarding whether the statement would have been properly admissible. The speculative exercise that the dissent

18

offers, *post* at 23-24, is exactly what we are seeking to avoid. Often, a factual record is necessary to determine the soundness of the trial court's ruling if for no other reason than to conduct a harmless error analysis. Extension of the *Luce* and *Finley* rule to the instant circumstance ensures that appellate courts are not forced to entertain abstract allegations of error.

Because the practical considerations extant in *Luce* and *Finley* of evaluating theoretical error in the absence of a defendant's testimony are also present in this case, we follow the lead of *Wilson* and *Bond* and extend the *Luce* rule to encompass alleged error implicating a defendant's Fifth Amendment privilege against self-incrimination. Thus, to preserve for appellate review a challenge to a trial court's ruling in limine allowing into evidence a defendant's exercise of his Fifth Amendment privilege, the defendant must testify at trial. Because the statement at issue in this case would have been properly admissible in one context, it is impossible to determine whether the trial court's ruling was erroneous.[11] Accordingly, we are unable to review defendant's allegation of error.

---

[11] Although we review claims of error under the standard announced in *People v Carines*, 460 Mich 750, 763;
Footnotes continued on following page.

19

## IV. CONCLUSION

We conclude that defendant was required to testify to preserve for review his challenge to the trial court's ruling in limine allowing the prosecutor to admit evidence of defendant's exercise of his *Miranda* right to remain silent. Because the statement at issue in this case would have been properly admissible in one context, defendant's failure to testify precludes us from being able to determine whether the trial court's ruling was erroneous and, if so, whether the error requires reversal. Accordingly, we affirm the judgment of the Court of Appeals.[12]

> Maura D. Corrigan
> Elizabeth A. Weaver
> Clifford W. Taylor
> Robert P. Young, Jr.
> Stephen J. Markman

---

597 NW2d 130 (1999), that standard applies only when an error exists. Because defendant's decision not to testify prevents us from being able to determine whether the trial court's ruling was erroneous, the *Carines* plain error standard is inapplicable.

[12] The dissent criticizes our opinion for declining to review the sentencing issue that defendant raised in his application for leave to appeal. *Post* at 26-27. Defendant has abandoned that issue by failing to address it in his brief on appeal in this Court. *Steward v Panek*, 251 Mich App 546, 558; 652 NW2d 232 (2002).

20

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                     No. 118021

ERIC BOYD,

    Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

I would not extend the ruling in *Luce v United States*[1] and *People v Finley*[2] to this case. I find that the trial court's error here was plain enough to require reversal, despite defendant's decision not to testify. Therefore, I would reverse the Court of Appeals decision and remand this case for a new trial.

## The Majority Mischaracterizes *Finley*

*Finley* does not stand for anything more than a specific application of *Luce*. It holds that, to preserve a claim of error concerning improper impeachment by prior

_____

[1] *Luce v United States,* 469 US 38; 105 S Ct 460; 83 L Ed 2d 443 (1984).

[2] *People v Finley,* 431 Mich 506; 431 NW2d 19 (1988).

convictions under MRE 609, a defendant must testify. Although Justices Boyle and Griffin joined Chief Justice Riley's lead opinion, Justice Brickley joined only part of it. *Finley*, *supra* at 526-531. He concurred with the adoption of the rule as defined in *Luce.* However, he disagreed with certain elements of the opinion. *Finley*, *supra* at 526. One of his specific concerns was that it used overly broad language in obiter dictum. *Id*. at 530. He wrote that the lead opinion had no authority for its statement that

> "the straightforward logic of *Luce* . . . is that as to evidentiary rulings, error does not occur until error occurs; that is, until the evidence is admitted. Obviously, in other contexts, if an offer of proof is made and the court erroneously permits the introduction of hearsay, character evidence, similar acts, or the myriad of evidence objectionable under the MRE, there is no error requiring reversal unless the evidence actually is introduced." [*Id.*, quoting lead opinion at 512.]

He also noted that "the notion that reviewable error does not occur until admission of the challenged evidence does not square with actual practice." *Id*. at 531.

> Interlocutory appeals are regularly taken on evidentiary questions and pretrial rulings are often deemed erroneous in spite of the fact that their effect has not yet been felt at trial. [*Id.*]

> He cautioned that "[e]rror can also occur at trial in varying forms, and the Court should not be so quick to define a universal principle,

2

particularly since the specific grounds for the adoption of the *Luce* requirement are so clearly explained by the Chief Justice." *Id*.

Thus, although Justice Brickley supported the adoption of *Luce*, he agreed to only a limited adoption of its principle. He left no doubt that he would not apply *Finley* beyond its specific grounds.

Justice Cavanagh concurred in the result, but dissented from the rationale of the lead opinion with one exception noted below. *Id*. at 531-544. Justices Levin and Archer concurred in Justice Brickley's opinion, "except for the language of his opinion concurring in the language of the plurality opinion that fails to recognize that a defendant who wishes to preserve for appeal an adverse ruling on the admission of a prior conviction record may do so by testifying outside the presence of the jury." *Id*. at 557-558 (Levin, J.).

Therefore, the majority in this case incorrectly cites the *Finley* lead opinion for the proposition that "'error does not occur until . . . the evidence is admitted.'" *Ante* at 9 quoting *id.*, p 512 (Riley, C.J.). *Finley* does not hold that if an offer of proof is made and the evidence is erroneously deemed admissible, there is no error requiring reversal unless the evidence is actually introduced. *Ante* at 8.

Contrary to the majority's citation here, four *Finley* justices rejected the lead opinion's sweeping premise. See *id*. at 530-531 (Brickley, J.); 537-538 (Cavanagh, J.); 557-558 (Levin, J.). The "majority" of the *Finley* Court was composed of only three justices who in obiter dictum saw an application of *Luce* beyond MRE 609. Hence, the rationale in the lead opinion in *Finley* giving an expanded view of *Luce* is erroneously based.

## *Luce* and *Finley* are Inapplicable

Defendant seeks review of an incorrect ruling involving his right to remain silent after receiving *Miranda* warnings. *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). The majority "extends" the holding of *Luce* to this case. This extension ignores language in both *Luce* and *Finley* specifically limiting their holdings to cases involving a subtle evidentiary balancing test of nonconstitutional dimensions concerning impeachment with prior convictions. *Luce*, 469 US 43; *Finley*, 431 Mich 514 (Riley, C.J.), 553-554 (Levin, J.).

Indeed, Chief Justice Burger's opinion for the Court in *Luce* carefully distinguished *Luce* from *Brooks v Tennessee* and *New Jersey v Portash*. *Brooks v Tennessee*, 406 US 605; 92 S Ct 1891; 32 L Ed 2d 358 (1972); *New Jersey v Portash,* 440 US 450; 99 S Ct 1292; 59 L Ed 2d 501 (1979).

4

*Brooks* and *Portash* involved "Fifth Amendment challenges to state court rulings that operated to dissuade defendants from testifying." Justice Burger wrote that they did not involve "a federal court's preliminary ruling on a question that did not reach constitutional dimensions, such as a decision under [FRE 609(a)]." *Luce*, 469 US 42-43.

The *Luce* Court was primarily concerned about the practical problem of trial courts being forced to make FRE 609 evidentiary rulings in a factual vacuum:

> A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true under Rule 609(a)(1), which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify. [*Luce*, 469 US 41.]

I agree with the dissent in *Finley* that the above rationale from *Luce* is unpersuasive even in the limited context of a ruling in limine on an FRE 609 motion. *Finley*, 431 Mich 537 (Cavanagh, J.). In any event, the review of prior conviction evidence under FRE 609(a) involves both a nonconstitutional question and a subtle balancing test. The test is heavily dependent on the precise scope of the defendant's testimony. However, the claimed error in this case involves solely a legal question and is one of constitutional dimensions.

5

The majority presents case law from federal circuit courts of appeals that have expanded *Luce* to claims other than those involving FRE 609 determinations. Included are opinions from two jurisdictions that have extended the *Luce* rule to questions involving constitutional claims of error. However, the majority places too much reliance on the warm reception of these courts to the unwarranted expansion of *Luce* by federal circuit courts. "It is only understandable that our extremely overworked judges will display a natural fondness for any strict preservation of error rule, which necessarily lightens the often crushing case load of both trial and appeals court judges." Duane, *Appellate review of in limine rulings*, 182 FRD 666, 682 (1999).

Various federal and state court opinions have recognized the inapplicability of *Luce* to Fifth Amendment and Sixth Amendment violations, as well as other similar questions of constitutional error.[3] I find these opinions persuasive.

---

[3]See, e.g., *United States ex rel Adkins v Greer*, 791 F2d 590, 593-594 (CA 7, 1986)(a confession elicited in violation of the defendant's Fifth Amendment rights can be reviewed despite the defendant's election not to testify); *United States v Chischilly*, 30 F3d 1144, 1150-1151 (CA 9, 1994) (a defendant was permitted to challenge the admissibility of a confession, despite the fact that it was not introduced, because the trial court's ruling that the confession could be used prevented the defendant from
Footnotes continued on following page.

There are a number of important reasons for the differentiation they recognize. First, as aptly noted by Justice Cavanagh in *Finley*, *Luce*'s requirement that a defendant testify to preserve the impeachment issue was "inconsistent with the spirit, if not the precise holding," of two of the United States Supreme Court's own decisions, *Brooks* and *Potash*. Both specifically dealt with questions of Fifth Amendment challenges to state court rulings. *Finley*, 431 Mich 535-536 (Cavanagh, J.). Justice Brennan in his *Luce* concurrence specifically recognized the factual differences of such a claim. He noted, also, that a different "calculus of interests" sets the types of claims

---

raising an insanity defense); *Biller v Lopes*, 834 F2d 41, 43-45 (CA 2, 1987) (a habeas corpus petitioner was permitted to raise a claim that the denial of a motion in limine unfairly kept him from testifying, when the motion was based on the unconstitutionality of a prior conviction); *United States v Jenkins,* 785 F2d 1387 (CA 9, 1986) (the use of grand jury testimony for impeachment was moot because the government did not introduce it at trial); *Pillotti v Superintendent*, 759 F Supp 1031 (SD NY, 1991) (a challenge to impeachment evidence obtained with a fraudulently obtained guilty plea in a prior case). See also *State v Greve,* 67 Wash App 166; 834 P2d 656 (1992); *State v Brings Plenty,* 459 NW2d 390 (SD, 1990); *State v Brunelle* 148 Vt 347; 534 A2d 198 (1987); *People v Henderson,* 745 P2d 265 (Colo App, 1987); *State v Lamb*, 84 NC App 569, 580-581; 353 SE2d 857 (1983); *People v Brown*, 42 Cal App 4th 461; 49 Cal Rptr 2d 652 (1996). Interestingly, the court in *United States v Wilson*, 307 F3d 596 (CA 7, 2002), failed to address the precedent of its own circuit in reaching its decision.

7

of error apart from one another. *Luce*, 469 US 44 (Brennan, J., concurring).

I agree with Justice Brennan that a different "calculus of interests" is present when the alleged claim of error is a constitutional one. I find that, even more than in a review of an FRE 609 ruling, the calculus of interests involved where the alleged error is constitutional in nature requires appellate court review. This is true even if the defendant does not testify at trial and the evidence is not provided to the jury. As Justice Cavanagh so eloquently stated in his dissent in *Finley*:

> Let us start with the language of the Fifth Amendment itself, which states in part:
>
> No person . . . shall be compelled in any criminal case to be a witness against himself . . . . [US Const, Am V.]
>
> Implicit in this constitutional guarantee is that no penalty, no sanction, no disadvantage to the defendant shall flow from his decision not to testify at trial.
>
> *Griffin v California*, 380 US 609; 85 S Ct 1229; 14 L Ed 2d 106 (1965), reh den 381 US 957 (1965), held unconstitutional a statute permitting the prosecution to comment on the failure of the defendant to testify at his criminal trial. *Carter v Kentucky*, 450 US 288; 101 S Ct 1112; 67 L Ed 2d 241 (1981), held that the Fifth Amendment required the court, upon the request of a nontestifying defendant, to instruct the jury not to draw an adverse inference from the failure of the defendant to testify. The central theme of both cases was "*that a defendant must pay no court-imposed price for the exercise*

8

*of his constitutional privilege not to testify*." 450 US 301. (Emphasis added.)

Similarly, the Court in *Lefkowitz v Cunningham*, 431 US 801, 805; 97 S Ct 2132; 53 L Ed 2d 1 (1977), observed:

"[Our] cases have established that a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself."

The *Luce* rule exacts a heavy price from the defendant for electing not to testify at his trial. He is denied the right on appeal to raise what may be a substantial issue. [*Finley*, 431 Mich 533-534 (Cavanagh, J.).]

Here, the majority's decision exacts an even heavier price on defendant's decision not to testify at trial. An accused in the position of the defendant in *Finley* must testify or give up the right to raise a substantial issue. In this case, however, the claim of error surrendered is a constitutional one, not simply an evidentiary one.

### *Luce* Did Not Invoke Constitutional Questions

In an attempt to justify why retroactive application is unwarranted in this case, the majority chooses to find constitutional implications present in *Luce* and *Finley.* However, both the majority and the concurrence in *Luce* and the lead opinion in *Finley* took pains to distinguish Rule 609 questions from those involving constitutional claims of error. In direct response to Justice Cavanagh's dissent in Finley, the lead opinion stated:

9

> [D]espite the suggestions in Justice Cavanagh's opinion, it cannot be seriously claimed that the Fifth Amendment bars adoption of *Luce*. Whatever one's views of the philosophy of particular justices, in Luce, all eight justices agreed that the issue did not involve a Fifth Amendment challenge. The issue presented is what procedural steps are necessary to preserve an issue for appeal, a matter that no more levies a "court-imposed price" for the exercise of a constitutional privilege than procedural rules requiring the timely assertion of other constitutional rights. [*Finley*, 431 Mich 520 (Riley, J.).]

The majority's recognition that "[a] defendant's right to testify in his own defense stems from the Fifth, Sixth, and Fourteenth amendments of the United States Constitution", *ante* at 12, arises from its reading of *Rock v Arkansas*, 483 US 44, 46-47; 107 S Ct 2704; 97 L Ed 37 (1987). However, *Rock* was not published until after *Luce* had been decided and was not mentioned in *Finley*, which was released soon after *Rock*. As noted by Professor Duane, there is no indication that the defendant in *Luce* raised, or that the *Luce* Court saw itself as deciding, any constitutional claim whatsoever. At the time *Luce* was decided:

> Chief Justice Burger and a majority of the Court still regarded it as an open question whether a criminal accused had a constitutional right to testify in his own trial. Two years after *Luce*, Chief Justice Burger wrote for the majority in *Nix v Whiteside* that "this Court has never explicitly held that a criminal defendant has a due process right to testify in his own

10

behalf . . . ." [*Nix v Whiteside*, 475 US 157, 164; 106 S Ct 988; 89 L Ed 2d 123 (1986)]. This comment provoked a response by a minority of four justices who were "puzzled by the Court's implicit suggestion that whether a defendant has a constitutional right to testify in his own defense remains an open question." [*Id.* at 186 n 5 (Blackmun, J., concurring).]

Since the time Burger wrote for the Court in *Luce* and *Nix*, however, the Supreme Court has formally settled that an accused has a constitutional right to testify at his trial [e.g., *Rock, supra* at 49-51]. That being the case, there is now a plausible basis for a criminal appellant to claim—unlike the appellant in *Luce*—that an erroneous ruling to allow impeachment amounted to an impermissible burden on the exercise of his constitutional rights. [Duane, *supra* at 686.]

Professor Duane used this observation to show why *Luce* was out of step with previous Supreme Court decisions. He theorized that this was the reason that the Supreme Court apparently has been highly reluctant to give *Luce* any precedential value in the years since it was issued. Also, he believes that the Supreme Court would not rule as it did in *Luce* were it again presented with the same issue.

The Majority's Reliance on *Ohler* is Misplaced

The majority reads too much into the decision in *Ohler v United States*, 529 US 753; 120 SCt 1851; 146 L Ed 2d 826 (2000). There, defendant was confronted with the potential introduction of evidence of a prior conviction. The defendant sought in limine to preclude the evidence under

11

FRE 609, and the trial court denied the motion. The defendant then elected to testify and explain the earlier conviction before he could be impeached with it. After being convicted, he asserted on appeal that the trial court's ruling infringed his right to testify. The United States Supreme Court, in a five-to-four decision, affirmed the conviction.

The majority, in an opinion by Chief Justice Rehnquist, found that the defendant "runs into the position taken by the Court in a similar, but not identical, situation in *Luce*" that any possible harm from the decision whether to testify is wholly speculative. *Ohler*, 529 US 759. This is the only mention of *Luce* in the majority opinion. The Court's holding was based primarily on a waiver analysis: "We conclude that a defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error." *Id.* at 760.

The dissent, authored by Justice Souter, disagreed with the waiver analysis. It discussed *Luce* in three paragraphs. The majority here has quoted the second paragraph, yet conveniently omitted the first and third. The relevant text, *id.* at 760-761, is as follows:

12

The only case of this Court that the majority claims as even tangential support for its waiver rule is *Luce v United States*, 469 US 38; 105 S Ct 460; 83 L Ed 2d 443 (1984). *Ante* at [759]. We held there that a criminal defendant who remained off the stand could not appeal an *in limine* ruling to admit prior convictions as impeachment evidence under Federal Rule of Evidence 609(a). Since the defendant had not testified, he had never suffered the impeachment, and the question was whether he should be allowed to appeal the *in limine* ruling anyway, on the rationale that the threatened impeachment had discouraged the exercise of his right to defend by his own testimony. The answer turned on the practical realities of appellate review.

An appellate court can neither determine why a defendant refused to testify, nor compare the actual trial with the one that would have occurred if the accused had taken the stand. With unavoidable uncertainty about whether and how much the *in limine* ruling harmed the defendant, and whether it affected the trial at all, a rule allowing a silent defendant to appeal would require courts either to attempt wholly speculative harmless-error analysis, or to grant new trials to some defendants who were not harmed by the ruling, and to some who never even intended to testify. In requiring testimony and actual impeachment before a defendant could appeal an *in limine* ruling to admit prior convictions, therefore, *Luce* did not derive a waiver rule from some general notion of fairness; it merely acknowledged the incapacity of an appellate court to assess the significance of the ruling for a defendant who remains silent.

This case is different, there being a factual record on which Ohler's claim can be reviewed. She testified, and there is no question that the *in limine* ruling controlled her counsel's decision to enquire about the earlier conviction; defense lawyers do not set out to impeach their own witnesses, much less their clients. Since analysis for harmless error is made no more difficult by the fact that the convictions came out on direct examination, not

13

cross-examination, the case raises none of the practical difficulties on which *Luce* turned, and *Luce* does not dictate today's result.[1]

_____

[1] The *Luce* Court anticipated as much: "It is clear, of course, that had petitioner testified and been impeached by evidence of a prior conviction, the District Court's decision to admit the impeachment evidence would have been reviewable on appeal along with any other claims of error. The Court of Appeals would then have had a complete record detailing the nature of petitioner's testimony, the scope of the cross-examination, and the possible impact of impeachment on the jury's verdict." 469 US at 41. There are, of course, practical issues that may arise in these cases; for example, the trial court may feel unable to render a final and definitive *in limine* ruling. The majority does not focus on these potential difficulties, and neither do I, though some lower courts have addressed them. See, e.g., *Wilson v Williams*, 182 F.3d 562 (CA 7, 1999) (en banc). For the purposes of this case, we need consider only the circumstance in which a district court makes a ruling that is plainly final.

_____

It is manifest that the majority's reliance on *Ohler* in the instant case is misplaced. The United States Supreme Court only begrudgingly cited *Luce* in *Ohler*. Additionally, *Ohler* is the only United States Supreme Court decision to even mention *Luce* in passing. Finally, *Ohler* and *Luce*, unlike the instant case, involved alleged error stemming from the introduction of prior conviction evidence under FRE 609. For all practical matters, *Ohler* is yet another decision indicating that *Luce* should be confined to

prior conviction evidence and should not be extended to claims of constitutional error.

### The Holding in *Luce* Should Not Be Extended

The majority has found no case law holding that *Luce* involved a constitutional claim of error. I have discovered none. Most certainly, the lead opinion in *Finley* did not do so.

In my view, the majority's acknowledgment today of the implication of an FRE 609 ruling on a defendant's Fifth Amendment right to testify proves the correctness of Justice Cavanagh's position in *Finley.* Such an acknowledgment also strengthens, rather than detracts from, the arguments against extending *Finley* to claims outside its narrow holding.

Even if *Luce* can be read to distinguish evidentiary "questions not reaching constitutional dimensions" from claims of error that involve direct constitutional error, the *Luce* holding presents little support for expansion beyond its borders. The trial court's decision in this case fully implicates both a defendant's Fifth Amendment right to testify and his Fifth Amendment right to remain silent in the face of post-*Miranda* accusations. These rights come into play even when the trial court's ruling restricts the admission of evidence of a prior conviction

15

to rebuttal, in contrast to the trial court's more expansive ruling here.

The magnitude of the choice that the ruling places on the defendant far outweighs that to be made under an FRE or MRE 609 ruling. In a rule 609 question, the defendant must choose between testifying and not testifying. If he does not testify, he relinquishes his opportunity to present his account of the incident. If he does testify, the prosecution may use improperly admitted prior convictions to impeach his credibility.

In this case, by contrast, if the defendant chooses not to testify, he will forgo the opportunity to present his account of the incident and lose all chance to appeal. If he testifies, he risks being impeached with improperly admitted substantive statements that the jury is certain to use as evidence of his guilt of the instant offense.

The risk that this damaging impeachment evidence will destroy defendant's credibility in the jury's eyes produces a chilling effect on defendant's exercise of the right to testify. That risk acts as an impermissible "penalty imposed by courts for exercising a constitutional privilege." *Griffin*, 380 US 614. In essence, the majority's holding here requires the defendant to choose which constitutional right to give up, his Fifth Amendment

16

right to post-Miranda silence or his Fifth Amendment right not to testify.[4]

Even if one believes that *Luce* gave due deference to the chilling effect on a defendant's right to testify, the instant case brings into sharp focus the observation by Justice Brennan: the "calculus of interests" may be much different in a matter involving a simple evidentiary ruling than in one involving a claimed error of constitutional magnitude.

### No Weighing of Evidence Is Appropriate

As noted by Justice Brennan,[5] concerns about ruling in a factual vacuum are not present to the same extent when the court's ruling turns on legal, rather than factual, considerations. See, e.g., *United States ex rel Adkins v Greer*, 791 F2d 590, 594 (CA 7, 1986). The majority implies

---

[4] The majority calls this statement "misleading." When attempting to substantiate its dismissive characterization of the statement, it ignores the fact that defendant in this case was confronted with an erroneous trial court ruling. It ignores, in addition, that no facts suggest that, had he taken the stand, defendant would have claimed to have made an exculpatory statement to the police. Hence, the impeachment he faced would have had to be improper and, contrary to the majority's reasoning, defendant could not properly have been impeached with his post-*Miranda* silence.

[5] *Luce*, 469 US 43-44 (Brennan, J.).

that the question presented here involves a factual, rather than legal, question.  It is incorrect.

The prosecution's threatened use as a confession of defendant's post-*Miranda* affirmative assertion of his right to remain silent would violate the Constitution in all but extremely limited circumstances. *Doyle v Ohio*, 426 US 610, 619 n 11; 96 S Ct 2240; 49 L Ed 2d 91 (1976).  It is important to realize that the exception in *Doyle* is not as broad as the majority's quotation implies.  Postarrest silence can be used to contradict a defendant who testifies that he made an exculpatory statement to the police.  It cannot be used to impeach the substance of a defendant's testimony.  *Doyle,* 426 US 619 n 11.  See also *People v Dennis*, 464 Mich 567, 573 n 5; 628 NW2d 502 (2001).

As recognized in *People v Bobo*,[6] the *only* use of post-*Miranda* silence is to contradict a specific assertion that a defendant provided a statement to the police.  *Id.* at 359.  Any remaining validity for the rationale of *Luce* and later evidentiary decisions examining evidentiary rulings, such as those involving MRE 403 and MRE 404(b), does not apply here.

---

[6]*People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973).

18

The *Luce* Court opined that a reviewing court's weighing of the probative value and prejudicial effect of a prior conviction under Rule 609 depends on the nature of the defendant's testimony. No such weighing was necessary in this case. At the time of the ruling in limine, the trial court was not required to determine the extent of defendant's actual testimony. It was required merely to conclude that the invocation of silence could not be used as substantive evidence in the prosecution's case-in-chief or to rebut the substance of defendant's testimony.

Moreover, the trial court should have held that defendant's statement was admissible only if defendant took the stand and asserted that he made an exculpatory statement to the police when arrested. Appellate review does not depend on knowledge of the exact extent of defendant's later trial testimony or a weighing of factors such as those present in a Rule 609 analysis.

### Defendant's Claim of Error is Not Speculative

Nor do I agree with the majority's determination that defendant's claim of error is "speculative" because defendant did not testify and his earlier statement was not given to the jury. That determination ignores the plain error present in this case. It disregards the chilling effect on defendant's decision not to testify and the

important distinction Michigan recognizes between reviewing constitutional error and nonconstitutional evidentiary error.

The majority's assertion that "it is impossible to determine whether the trial court's ruling was erroneous,"[7] overlooks the content of the ruling that it is reviewing. The majority places much emphasis on the fact that the admissibility of a defendant's post-*Miranda* silence depends on the context in which the prosecutor sought to admit it. *Ante* at 13. The context here, judging from the substance of the prosecutor's arguments and the trial court's actual ruling, confirms that the trial court admitted the statement for any and all purposes. The ruling was based on an entirely flawed view of the scope of the Fifth Amendment. It was premised on the erroneous conclusion that the challenged statement was not protected by the Fifth Amendment:

> [Defendant] agrees that he's going to give a statement and he starts. The law says that you can't stop in the middle and say, well, now I want to assert my Fifth Amendment rights. You don't have any further Fifth Amendment rights once you start to give a statement. You can't say what you want said and not say anything else.

[7]*Ante* at 18.

20

As previously recognized by our Court, in a situation where "a defendant answered several questions and then invoked his right to remain silent, *Doyle*, *supra* at 618-619, would prevent the prosecutor from commenting on this silence."  *People v McReavy*, 436 Mich 197, 219 n 23; 462 NW2d 1 (1990).  See also 218-219.  Such silence includes "not only 'muteness; [but] includes the statement of [the defendant's] desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted,'" *Id.*, 218 n 21, citing *Wainwright v Greenfield*, 474 US 284, 295, n 13; 106 S Ct 634; 88 L Ed 2d 623 (1986).

Despite this basic principle, the trial court here did not limit in any way the use of defendant's statement.  It did not recognize the specific limitations in *Doyle v Ohio*,[8] or this Court's majority opinion in *People v Dennis*, 464 Mich 567, 573 n 5; 628 NW2d 508 (2001).  In *Dennis*, the erroneously admitted evidence involved inadvertently elicited trial testimony about the defendant's refusal to submit to a police interview.  *Id*. at 578.  This Court recognized the error in the introduction of the evidence, but found the evidence harmless.  It relied in large part on the fact that, because the trial court specifically

---

[8]*Supra* at 619 n 11.

found error in the admission, it gave a "forceful curative instruction" to the jury that the evidence "'cannot be used by you in any way and is not an indication of anything.'" *Id.*

The trial court's ruling here placed no restriction on the prosecution's use of the statement, either during direct testimony or in rebuttal. The court found simply that the Fifth Amendment did not apply at all. Not only was the trial court's ruling erroneous, the error was plain. The problems of "ruling in a vacuum" are simply not applicable here.

## The Error is Not Harmless

The majority's analysis of the error also fails to note that the trial court's ruling was clearly erroneous. Moreover, it fails to recognize the important distinction between the error in *Luce* and the error in the instant case. The ruling in *Luce*, upon which the defendant's claim of error was predicated, involved a *nonconstitutional* evidentiary issue.

In Michigan today, it is the defendant who bears the burden of demonstrating that a nonconstitutional error harmed him by causing him not to testify. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). If, instead, the error were a preserved constitutional one, the burden

**22**

would be on the prosecution to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *People v Anderson* (*After Remand*), 446 Mich 392, 406 n 36; 521 NW2d 538 (1994), quoting *Chapman v California*, 386 US 18, 23; 87 S Ct 824; 17 L Ed 2d 705 (1967).

Thus, concerns about the "speculative" effect of an erroneous FRE or MRE 609 ruling on a defendant's decision not to testify are not present in the instant case. The effect is presumed to be prejudicial. Indeed, given the clear error in the trial court's broad ruling of admissibility, I question the truth of the majority's assertion that it cannot determine whether the ruling was erroneous. In addition, I would find that the prosecution's choice not to elicit defendant's statement on direct examination did not remove from the flawed ruling its chilling effect.

The majority's assertion that the evidence "might not have been admitted at all" even if defendant had testified[9] ignores the realities of the trial court's misunderstanding about the limited admissibility of the statement. Statements made at the hearing in limine demonstrate that

---

[9]*Ante* at 17.

23

the prosecution intended to introduce defendant's statement if he testified about having provided an exculpatory statement to the police. However, even if he had not, the prosecution would have introduced the statement to rebut other parts of his testimony. The trial court's ruling made clear that it would have admitted the statement for an improper purpose, because the court was under the mistaken impression that the Fifth Amendment did not apply.

At the time of the decision to testify, defendant was faced with an erroneous ruling involving substantive evidence of guilt. Unlike the majority, I would not expect defendant to forecast that the court would have a revelation about the impropriety of its ruling, especially because it immediately predated the trial. Nothing in the record suggests that such a revelation would occur and, given the rationale used by the trial court in making the ruling, I find such a result highly unlikely. Whatever validity that argument may have in different circumstances, it is inapplicable here.

### The Challenge In Limine was Appropriate

Nor do I find persuasive the majority's assertion that a reversal based on the admission of evidence contested in limine, but never introduced at trial, will invite abuse. This argument fails to recognize that appellate courts will

review claims of error, even when they are not preserved *at all.* *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Moreover it has little merit in the setting where claims of constitutional error are raised, and none in the instant case.

A defendant does not abuse the system by seeking before trial to suppress evidence obtained in violation of his constitutional rights and directly bearing on the analysis of guilt. To the contrary, as this Court has noted, a contemporaneous objection provides the trial court "'an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights.'" *Carines, supra* at 764-765 (citations omitted). As recognized by a majority of the justices in *Finley*, preliminary evidentiary rulings are valid, important, and logical ways to review questions of evidentiary error. *Finley*, *supra* at 531 (Brickley, J.), at 537 (Cavanagh, J.), and at 557-558 (Levin, J.).

### Conclusion

The error in this case was preserved by timely objection. Also, the trial court's specific ruling on the motion in limine was erroneous. Therefore, defendant's

conviction must be reversed unless the prosecution can prove beyond a reasonable doubt that the error did not contribute to the verdict. *Anderson* (*After Remand*), *supra*. The prosecution has failed to do this.

The conviction in this case was dependent almost entirely on the testimony of the twelve-year-old complainant, about whose honesty the jury obviously had doubts. Had defendant testified, the case would have been a credibility contest. But, because of the trial court's erroneous ruling, defendant did not testify. Hence, the verdict was influenced by the trial court's error. The prosecution has not shown that the evidence at trial so overwhelmingly proved defendant's guilt that his testimony would not have made a difference.

Therefore, the trial court erred and the prosecution cannot show that the error was harmless beyond a reasonable doubt. I would reverse defendant's conviction and remand this case for a new trial. Because of this conclusion, I need not review defendant's additional claim that the trial court improperly exceeded the sentencing guidelines for his conviction. However, I note that the sentence seems to have been influenced by the trial court's view that defendant committed first-degree criminal sexual conduct, notwithstanding his acquittal of that charge. The issue is

hardly frivolous, yet the majority makes no mention of it, merely alluding to the lower court's decisions to justify not reaching the matter.

                              Marilyn Kelly
                              Michael F. Cavanagh