**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Toby C. PATTERSON, Defendant–Appellant.**

**No. 00–30306.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 23, 2004.

Filed Aug. 20, 2004.

Gerald R. Smith, Assistant Federal Public Defender, Spokane, WA, for the defendant-appellant.

Nancy D. Cook, Assistant United States Attorney, Coeur d'Alene, ID, for the plaintiff-appellee.

Before NOONAN, TASHIMA, and TALLMAN, Circuit Judges.

TASHIMA, Circuit Judge:

Toby C. Patterson was convicted of one count of manufacturing marijuana in violation of 21 U.S.C. § 841 and sentenced to 188 months' imprisonment. In a prior opinion, we affirmed Patterson's sentence and conviction. *United States v. Patterson*, 292 F.3d 615 (9th Cir.2002). We held that jeopardy did not attach when the district court accepted Patterson's guilty plea and that the court accordingly did not err in vacating Patterson's plea and proceeding to trial over his objection. *Id.* at 622–25. We subsequently held en banc, however, that the district court does not have the authority to vacate a defendant's plea when the court has accepted the plea, but deferred a decision regarding whether to accept the plea agreement. *Ellis v. United States Dist. Court,* 356 F.3d 1198 (9th Cir.2004) (en banc). Because the en banc opinion in *Ellis* undercut the rationale of our prior opinion, we granted Patterson's petition for panel rehearing and withdrew our prior opinion. *United States*

*v. Patterson,* 359 F.3d 1190 (9th Cir.2004). We now hold that the district court erred in vacating Patterson's guilty plea. We therefore vacate his sentence and remand with instructions to reinstate the original plea and sentence Patterson in accordance with that plea.

## BACKGROUND

George Gow, a police officer with the Sandpoint City Police Department, in Idaho, received information from a citizen named Calvin Stevens about marijuana growing on property near Stevens' home. Stevens told Gow that, while out for a walk, he noticed a strong smell of marijuana near a mobile home and saw pots of marijuana in a gutted trailer on the property. Stevens also told Gow that he was familiar with the look and smell of marijuana because he had been "introduced" to it in the Army. Stevens further stated that there was a humming noise coming from the trailer and that the trailer's windows seemed to be covered with plywood.

Gow went with Stevens to look at the property, where Gow saw the trailer and heard the humming noise described by Stevens, a sound that Gow had heard at other marijuana grow operations coming from halogen grow lights. After considering Gow's testimony, a state magistrate determined that there was probable cause to search the property and so issued a search warrant.

Gow and three other officers went to the property to execute the search warrant, but there was no response when they knocked on the door of the mobile home. They entered the trailer and found a drying screen with bud marijuana drying on it. The officers also found a number of marijuana plants inside the home, growing in boxes estimated to be eight feet, by four feet, by five feet. They pulled some of the smaller plants out of the boxes to take as

evidence and cut some of the larger stalks that they were unable to pull out. The officers videotaped the five-hour search and ultimately found a total of 278 plants.

Patterson was indicted in August 1999 on one count of knowingly and intentionally manufacturing 100 or more marijuana plants, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). After initially entering a plea of not guilty, Patterson entered into a plea agreement in which he agreed to plead guilty to manufacturing marijuana. The plea agreement stated that the number of marijuana plants was in dispute and would "be litigated at sentencing," which was scheduled for July 10, 2000.

The district court carefully conducted the colloquy required by Rule 11 of the Federal Rules of Criminal Procedure when the plea was taken on April 4, 2000. The court reviewed the written provisions of the plea agreement and clarified the sole remaining issue in dispute:

> THE COURT: Now, as counsel has pointed out and stated here in open court, the number of plants is in dispute, and the Court is going to have to resolve that on the time of sentencing, based upon the evidence as presented; that is in accordance with your understanding?
>
> THE DEFENDANT: Yes, Your Honor.
>
> \* \* \*
>
> THE COURT: [I]t is your position and your understanding that the Court has not made any commitment relating to the appropriate sentence in this case and is not bound by the plea negotiations?
>
> THE .DEFENDANT: Yes, I understand.
>
> THE COURT: Because the number of plants has not been determined, neither this Court nor counsel nor anyone else could tell you what the sentence might be at this point?

THE DEFENDANT: Yes, I understand that, Your Honor.

THE COURT: It is my understanding that you do admit that you are responsible or guilty of manufacturing marijuana plants and that you are guilty of the elements of this particular charge as outlined by Mr. McHugh [the prosecutor], but that you remain silent or not admitting the number of marijuana plants; is that correct?

THE DEFENDANT: That is correct, Your Honor.

THE COURT: So again, other than not admitting to the number of marijuana plants, do you agree with the summary given by Mr. McHugh?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: So you admit those facts and agree that those facts sustain each element of the charge with the exception of whether it be a class B, C or D felony, that will have to be determined once the Court determines the number of plants; right?

THE DEFENDANT: Yes, sir.

After finding that the plea was knowing and voluntary, and that there was a factual basis for each element of the offense, the court accepted the plea, set the date for sentencing, and told Patterson about preparation of the Presentence Report ("PSR"). While the court accepted the plea, therefore, it retained discretion to reject the plea agreement until after it had considered the PSR. The court admonished Patterson to be truthful with the probation officer preparing the PSR and reminded him that the court would "take everything into consideration right up to the day of sentencing."

Subsequently, on June 26, 2000, the United States Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which held that any fact, other than a prior conviction, that increases the penalty for a crime beyond the statutory maximum, must be submitted to a jury and proven beyond a reasonable doubt. *Id.* at 490, 120 S.Ct. 2348. Drug quantity is such a fact. *United States v. Buckland*, 289 F.3d 558, 568 (9th Cir.) (en banc), *cert. denied*, 535 U.S. 1105, 122 S.Ct. 2314, 152 L.Ed.2d 1067 (2002).

Patterson filed objections to the PSR on the same day that *Apprendi* was decided. On July 6, 2000, the government filed a response to Patterson's objections, arguing, *inter alia*, that the guilty plea should be set aside as insufficient under *Apprendi* because Patterson was not informed of the number of marijuana plants at the time he pled guilty. At the July 10, 2000, hearing, the district court agreed that the plea was invalid because the number of marijuana plants was not stipulated to by Patterson, nor found by a jury beyond a reasonable doubt. The court therefore vacated the guilty plea and scheduled a jury trial for September 2000.

The jury found Patterson guilty of manufacturing 100 or more marijuana plants. The district court sentenced Patterson to a term of 188 months' imprisonment and five years' supervised release. Patterson filed a timely notice of appeal.

## DISCUSSION

Patterson contends that the double jeopardy clause was violated when the district court vacated his guilty plea and proceeded to trial. "The Double Jeopardy Clause of the Fifth Amendment ... provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Brown v. Ohio*, 432 U.S. 161, 164, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). It protects a defendant against: (1) a second prosecution for the same offense after

acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Ohio v. Johnson,* 467 U.S. 493, 498, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). Patterson's claim is predicated on the second of these three protections; he contends that jeopardy attached when the court accepted his guilty plea and that he accordingly could not be tried again for that same offense. Patterson further argues that his guilty plea should be reinstated and that he should be sentenced in accordance with that plea, which would be to a five-year maximum because he pled guilty to an unspecified amount of marijuana. We agree.

## I.

■ Double jeopardy claims are subject to de novo review. *United States v. Scarano,* 76 F.3d 1471, 1474 (9th Cir.1996). Whether the district court is required to enforce a plea agreement is a question of law subject to de novo review. *United States v. Fagan,* 996 F.2d 1009, 1013 (9th Cir.1993). The adequacy of a Rule 11 plea hearing is also reviewed de novo. *United States v. Seesing,* 234 F.3d 456, 459 (9th Cir.2000).

## II.

Rule 11 sets forth the procedures that the district court must follow in accepting a plea of guilty or nolo contendere.[1] The court must determine that the defendant understands his rights and the nature of the charge, that the plea is voluntary, and that there is a factual basis for the plea. Fed.R.Crim.P. 11(b). Rule 11(c) then describes the plea agreement procedure, setting forth three types of plea agreements. The defendant may agree to plead guilty in exchange for the government's agreement to (A) not bring or move to dismiss other charges, (B) make particular sentencing recommendations to the court, or (C) agree upon a specific sentence or sentencing range. Fed.R.Crim.P. 11(c)(1)(A)-(C). Under the first and third types, the court may accept or reject the agreement, or it may defer its decision until it has considered the PSR. Fed.R.Crim.P. 11(c)(3)(A). The second type is not binding on the court, and the court must advise the defendant that he or she has no right to withdraw the plea if the court rejects the recommendation. Fed.R.Crim.P. 11(c)(3)(B). If the court rejects the plea agreement, it must so inform the parties and must give the defendant an opportunity to withdraw the plea, as well as advise the defendant that if the plea is not withdrawn, the court may "dispose of the case less favorably toward the defendant than the plea agreement contemplated." Fed. R.Crim.P. 11(c)(5).

The district court here conducted a very thorough Rule 11 colloquy. The court advised Patterson of his rights and the nature of the charge against him, and determined that the plea was voluntary and that there was a factual basis for the plea. The court then reviewed the plea agreement with Patterson. The agreement did not require the government to dismiss other charges; nor did it specify any sentencing recommendation. Instead, the plea agreement provided that the parties did not agree on the sentence, and that the court had made no commitment about the sentence and was not bound by the agree-

---

1. Rule 11 was amended in 2002 "as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules." Fed.R.Crim.P. 11 Advisory Committee's Note. The differences between the current version and the version in effect at the time of Patterson's hearing do not affect our analysis. The current version is cited throughout this opinion.

ment. The agreement also stated that the number of marijuana plants would be litigated at sentencing and that Patterson was aware of the varying penalties under 21 U.S.C. § 841(b)(1) for different quantities of plants. The court accordingly accepted Patterson's guilty plea, set a date for the sentencing hearing, and advised Patterson that it would review the PSR before determining the appropriate sentence.

## III.

■ In order to evaluate Patterson's double jeopardy claim, we must determine whether jeopardy attached when the district court accepted his guilty plea and whether the district court properly vacated the plea over Patterson's objections. *See Taylor v. Kincheloe,* 920 F.2d 599, 604 (9th Cir.1990) (stating that, because " 'an accused must suffer jeopardy before he can suffer double jeopardy,' [t]he initial inquiry in double jeopardy analysis ... is whether jeopardy has 'attached,' and if so, when") (citation omitted) (quoting *Serfass v. United States,* 420 U.S. 377, 393, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975)). We conclude that jeopardy attached when the court accepted Patterson's plea and that, once it accepted the plea, the court did not have authority to vacate the plea on the government's motion.

■ There is no question that the district court accepted Patterson's guilty plea, even though it made no commitment regarding the sentence it would impose or the plea agreement. Jeopardy ordinarily attaches when the court accepts a plea of guilty. *United States v. Vaughan,* 715 F.2d 1373, 1378 n. 2 (9th Cir.1983); *accord United States v. Aliotta,* 199 F.3d 78, 83 (2d Cir.1999) (stating that, "[a]s a general rule, jeopardy attaches in a criminal case at the time the district court accepts the defendant's guilty plea").

Where the defendant has the plea set aside, however, the general rule is that "double jeopardy is not implicated by his subsequently being recharged and tried on that same count." *Taylor,* 920 F.2d at 602 n. 2; *see also United States v. Barker,* 681 F.2d 589, 590–92 (9th Cir.1982) (rejecting a double jeopardy claim where the defendant pled guilty to second degree murder, subsequently moved to set aside her plea and conviction, and then argued that the district court's acceptance of her initial guilty plea acted as an acquittal as to a first degree murder charge). Patterson's case is, of course, distinguishable from *Taylor* and *Barker* because it was not his decision to have the plea set aside. Instead, the district court vacated the plea on the government's motion. Once the court accepted the plea and deferred acceptance of the plea agreement, however, the court was not free to vacate the plea on the government's motion. *United States v. Partida–Parra,* 859 F.2d 629, 631–34 (9th Cir.1988).

In *Ellis,* as here, the district court accepted the defendant's guilty plea but deferred acceptance of the plea agreement until after the PSR was prepared. After reviewing the PSR, the court vacated the plea on its own initiative and required the defendant to plead to higher charges.

■ Prior to *Ellis,* there had been some question as to "whether a court's acceptance of a plea of guilty constitutes the point at which jeopardy attaches ... where the court's acceptance was conditioned on the court's review of the plea agreement and the court's determination of the appropriateness of the sentence." *United States v. Faber,* 57 F.3d 873, 875 (9th Cir.1995) (discussing *Adamson v. Ricketts,* 789 F.2d 722 (9th Cir.1986) (raising but not resolving the issue), *rev'd,* 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987)). Although *Ellis* did not concern

double jeopardy, the en banc court rejected the position taken in our earlier precedent that the district court's acceptance of a guilty plea is " 'impliedly contingent' " on the court's review of the PSR. *Ellis,* 356 F.3d at 1205 (quoting *United States v. Cordova–Perez,* 65 F.3d 1552, 1555 (9th Cir.1995)). Thus, although the district court is free to reject the plea agreement after accepting a guilty plea, it is not free to vacate the plea either on the government's motion or *sua sponte.* Instead, when the court accepts a guilty plea but rejects the plea agreement, it becomes the defendant's choice whether to stand by the plea or to withdraw the plea. *Id.* at 1208. "Nowhere does Rule 11 provide that the district court may dictate this choice." *Id.*

> Rule 11 thus contemplates that the district court's rejection of a plea agreement allows the defendant, not the court, to make the next decision with respect to the status of the plea.... The only course available for the district court, upon rejecting the plea agreement, is to advise the defendant of his rights, including the right to withdraw the guilty plea.

*Id.* at 1207.

*Ellis* makes clear that view expressed in some of our prior cases that the plea agreement and the plea are " 'inextricably bound up together' such that deferment of the decision whether to accept the plea agreement carrie[s] with it postponement of the decision whether to accept the plea" is no longer good law. *Id.* at 1205 (quoting *Cordova–Perez,* 65 F.3d at 1556). The district court here clearly accepted Patterson's plea; when it did so, jeopardy attached. *Cf. United States v. Velasco–Heredia,* 319 F.3d 1080, 1086–87 (9th Cir. 2003) (stating that the government had lost its opportunity to prove that the defendant was responsible for more than 100 kilograms of marijuana where the defendant was found guilty of conspiring to distribute an unspecified quantity of marijuana, because "the Fifth Amendment to our Constitution does not permit [the defendant] to be tried twice for the same offense"). The court's postponement of the sentencing decision did not postpone the decision to accept the plea. The district court did not have authority to vacate the plea over Patterson's objections.

The government argues that the district court properly vacated Patterson's original plea because the plea did not specify the amount of marijuana and, accordingly, was invalid because it did not contain an essential element of the offense. *See* Fed. R. Crim P. 11(b)(1)(G) (requiring the district court to determine that the defendant understands "the nature of each charge to which the defendant is pleading"); *see also, e.g., Seesing,* 234 F.3d at 462 (holding that the district court failed to meet the requirements of Rule 11(c)(1) when it omitted an element of the crime, and that the error was not harmless). Even assuming that this may have been a plausible argument at the time the government filed its original opening brief, this contention clearly has been foreclosed by our intervening precedent. *See United States v. Thomas,* 355 F.3d 1191, 1195 (9th Cir.2004) (discussing cases confirming that drug quantity is not an element of the offense).

## IV.

Patterson contends that the proper procedure on remand is to reinstate his original guilty plea and sentence him in accordance with that plea. We agree.

Patterson pled guilty to an unspecified quantity of marijuana. We confronted the question of the proper procedure on remand when a defendant pleads guilty to an unspecified quantity of drugs in *Thomas.* The defendant in *Thomas* pled guilty to possession with intent to distribute cocaine

base but did not admit to the quantity of drugs that was charged in the indictment. The district court ruled that the guilty plea "necessarily admitted the drug quantity allegation in the indictment" and consequently imposed a sentence in accordance with that quantity. We held that this was error and remanded for resentencing based on an unspecified quantity of cocaine base. *Id.* at 1198–1202.

Similar to *Thomas*, Patterson's guilty plea established only that Patterson admitted to manufacturing an unspecified quantity of marijuana. We addressed in *Thomas* whether the proper procedure on remand would have been for the district court to empanel a jury to determine drug quantity beyond a reasonable doubt. We decided against this procedure in reliance on *United States v. Banuelos*, 322 F.3d 700 (9th Cir.2003), where "the failure to elicit an admission from the defendant regarding drug quantity could not be corrected by a drug quantity determination on remand." *Thomas*, 355 F.3d at 1202.

In *Banuelos*, the defendant pled guilty to conspiracy to distribute marijuana but disputed the amount of marijuana for which he should be held liable. Banuelos challenged only his sentence, not his conviction. That is, he

> admitted beyond a reasonable doubt that he conspired to distribute an unspecified amount of marijuana. Thus he was properly convicted of the general offense set forth in § 841(a)(1)—the offense for which there was a factual basis for conviction, because Banuelos did not allocute to drug quantity at the change of plea hearing or admit to drug quantity in a written plea agreement. Accord-

ingly, the maximum permissible sentence on remand is five years in prison, pursuant to 21 U.S.C. § 841(b)(1)(D).

*Banuelos*, 322 F.3d at 706–07; *cf. Velasco–Heredia*, 319 F.3d at 1083 n. 1, 1086–87 (affirming the conviction but remanding for resentencing pursuant to § 841(b)(1)(D) where the defendant appealed his conviction for conspiring to distribute an unspecified quantity of marijuana).

■ Here, although Patterson challenges on appeal the conviction resulting from the jury trial that followed the district court's vacation of his guilty plea, he specifically states that he does not appeal his conviction that necessarily ensued from his guilty plea.[2] Patterson's case accordingly is on all fours with *Banuelos* and *Thomas*. He entered a valid guilty plea to the manufacture of an unspecified amount of marijuana, which the district court accepted following a careful Rule 11 plea colloquy. Thus, Patterson "was properly convicted of the general offense set forth in § 841(a)(1)—the offense charged in the indictment and the only offense for which there was a factual basis for conviction." *Id.* at 706. The appropriate remedy, therefore, is to vacate the conviction and sentence resulting from his jury trial, reinstate the guilty plea, and remand for resentencing in accordance with that plea, which is to a maximum of five years' imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(D).

## CONCLUSION

Under *Ellis*, the district court's acceptance of Patterson's plea was not conditional. Nor was the plea defective for

---

**2.** For this reason, Patterson acknowledges that, if we reinstate his guilty plea, we do not need to address the remaining issues he raises on appeal. Accordingly, we do not consider Patterson's challenges to the district court's

evidentiary rulings, the jury instructions, the sufficiency of the evidence, and the constitutionality of the sentencing guidelines and the mandatory minimum sentencing provisions of 21 U.S.C. § 841.

failure to specify the quantity of marijuana. The district court accordingly erred in vacating Patterson's valid plea on the government's motion.

**VACATED and REMANDED.**

TALLMAN, Circuit Judge, concurring:

I concur only because I believe we are bound by our recent en banc decision in *Ellis v. United States Dist. Court,* 356 F.3d 1198 (9th Cir.2004) (en banc), to conclude that the district judge accepted Patterson's plea and that jeopardy attached at that point in time. Under *United States v. Thomas,* 355 F.3d 1191 (9th Cir.2004), and *United States v. Banuelos,* 322 F.3d 700 (9th Cir.2003), we must remand this case for resentencing based on an indeterminate amount of marijuana.

I write separately because of the unfortunate result our precedents dictate in this recidivist case. Unlike *Thomas,* in which the sentencing court failed to examine the facts supporting the quantity of drugs and instead borrowed the quantity alleged in the indictment, 355 F.3d at 1198–1202, this is a case where both parties had a full opportunity to present evidence of drug quantity to a jury, which found a substantial amount of marijuana grown by the defendant beyond a reasonable doubt. Unlike *Banuelos,* in which the defendant did not waive his right to have a jury determine quantity, 322 F.3d at 703, this is a case where the defendant knowingly and voluntarily pled guilty, fully expecting that he would be sentenced based upon whatever amount of marijuana the district court would later determine. And unlike *Ellis,* in which the court improperly "inject[ed] itself into the charging decision by vacating the plea and requiring [the defendant] to plead to higher charges[,]" 356 F.3d at 1203, this is a case where the learned district judge, operating in the unsettled wake of *Apprendi,* tried to craft a fair

solution that would scrupulously honor the defendant's right to have a jury determine all the relevant aspects of his crime and punishment.

It is unfortunate that *Ellis, Banuelos,* and *Thomas*—cases that bear enough technical similarity to this case to command their application here, but that bear no resemblance at all in spirit—require the district court on remand to blind itself to the jury's findings on drug quantity and sentence the defendant more leniently based solely on conviction for an unspecified amount of marijuana. Not even Patterson himself could have contemplated this windfall when he pled guilty, fully expecting that the disputed quantity of marijuana would be determined at sentencing.

When the law produces a result that is technically correct but is neither fair nor just, it is time to change the law. Because only another en banc panel or the Supreme Court can see that justice is done here in light of existing Ninth Circuit authority, I reluctantly concur in the disposition.