**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

TOBY C. PATTERSON,
*Defendant-Appellant.*

No. 00-30306

D.C. No.
CR 99-0081 EJL
D. Idaho

ORDER

Filed May 6, 2005

Before: John T. Noonan, A. Wallace Tashima, and
Richard C. Tallman, Circuit Judges.

Order;
Dissent by Judge Kozinski;
Dissent by Judge Kleinfeld

## ORDER

The panel has voted to deny the petition for panel rehearing, with Judge Tallman voting to grant it. Judge Tallman votes to grant the petition for rehearing en banc. Judges Noonan and Tashima recommend that the petition for rehearing en banc be denied. A judge of the court requested a vote on whether to rehear the matter en banc, but the matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc rehearing.

The petition for panel rehearing and the petition for rehearing en banc are **DENIED.**

KOZINSKI, Circuit Judge, with whom Judges O'SCANNLAIN, BYBEE, CALLAHAN and BEA join, dissenting from denial of rehearing en banc:

The panel holds that the district court violated the Double Jeopardy Clause by vacating Patterson's guilty plea and trying his case to a jury. This conclusion conflicts with *Ohio* v. *Johnson*, 467 U.S. 493 (1984), and the law of two other circuits. It also gives Patterson an undeserved windfall by shaving more than 10 years off his sentence. By failing to take this case en banc, we leave intact a dubious opinion, and we pass up the opportunity to reconsider our position in a long-standing circuit split about when double jeopardy protections kick in after a guilty plea.

## I

Patterson was arrested for manufacturing marijuana after the police found 278 pot plants in his trailer. In 1999, he was indicted for manufacturing 100 or more plants, but he pled guilty to manufacturing an unspecified number of plants—an offense that carries less time than being convicted of manufacturing 100 or more. His plea agreement stated that the actual number would "be litigated at sentencing." The plea colloquy envisioned that the district court would make this determination.

But the Supreme Court then decided, in *Apprendi* v. *New Jersey*, 530 U.S. 466, 490 (2000), that any fact, other than a prior conviction, that increases the penalty for a crime beyond the statutory maximum—including, in this case, the number of plants—must be submitted to a jury and proved beyond a reasonable doubt. The number of plants had not been admitted by Patterson, and, under *Apprendi*, the district court couldn't determine it. So the district court concluded that Patterson's plea was invalid and vacated it. Patterson was later tried, and a jury convicted him of manufacturing 100 or more marijuana plants.

Patterson appealed, arguing that the Double Jeopardy Clause prohibited the district court from vacating his guilty plea and forcing him to stand trial. Under the Double Jeopardy Clause, "once a defendant is placed in jeopardy for an offense . . . the defendant may neither be tried nor punished a second time for the same offense." *Sattazahn* v. *Pennsylvania*, 537 U.S. 101, 106 (2003). Its protections kick in, that is, only after the defendant has been placed in jeopardy—or, to use the technical expression, when jeopardy has attached. *See Serfass* v. *United States*, 420 U.S. 377, 388 (1975). Thus, the key question for the panel was whether jeopardy attached when Patterson pled guilty, so that his subsequent trial would amount to trying him a second time for the same offense.

The panel originally said it did not. It noted that, while " '[j]eopardy ordinarily attaches upon the court's acceptance of a plea agreement,' a guilty plea that is only *conditionally* accepted does not give rise to jeopardy." *United States* v. *Patterson* (*Patterson I*), 292 F.3d 615, 624 (9th Cir. 2002) (quoting *United States* v. *Smith*, 912 F.2d 322, 324 (9th Cir. 1990)) (emphasis added) (alteration in original) (citation omitted). Relying on a line of cases saying that a plea is "impliedly contingent" on review of the Presentence Report, the panel held that Patterson's plea was conditional and thus jeopardy did not attach when the district court accepted it. *Id.* at 624-25.

After the panel's decision, we rejected the "impliedly contingent" doctrine in *Ellis* v. *United States District Court*, 356 F.3d 1198, 1205 (9th Cir. 2004) (en banc). The panel here revised its opinion in light of *Ellis*. Its current opinion holds that, since the district court's acceptance of Patterson's plea was not conditional (*Ellis*), and since "[j]eopardy ordinarily attaches when the court accepts a plea of guilty," Patterson was protected by the Double Jeopardy Clause from the moment his plea was accepted. *United States* v. *Patterson* (*Patterson II*), 381 F.3d 859, 864-65 (9th Cir. 2004).

The panel's opinion thus gives Patterson a windfall: When Patterson pled guilty, he anticipated that the district court

would determine the number of marijuana plants involved and would then impose a sentence based on that amount. He disputed the actual number, to be sure, but he recognized that the determination would be left to the district court; he understood that, if the district court found (as the jury ultimately did in his trial) that he manufactured 100 or more plants, his *minimum* sentence would be 188 months. After the panel's decision, Patterson must now be sentenced within the statutory range for manufacturing an indeterminate amount of marijuana. For this crime, he faces a statutory *maximum* of 60 months. As Judge Tallman notes in his concurrence, "[n]ot even Patterson himself could have contemplated this windfall when he pled guilty, fully expecting that the disputed quantity of marijuana would be determined at sentencing." *Id.* at 867 (Tallman, J., concurring).

## II

The panel notes that the district court unconditionally accepted Patterson's guilty plea. It also notes that, under our caselaw, jeopardy ordinarily attaches when a guilty plea is unconditionally accepted.[1] It then leaps to the conclusion that jeopardy attached at the time of Patterson's plea. But there's the rub: The panel skips the logical step between generalizing about when jeopardy *ordinarily* attaches and specifically concluding that it attached *in this case*. This is a leap that is prohibited by *Ohio* v. *Johnson*, 467 U.S. 493 (1984).

In *Johnson*, the defendant had been indicted on four counts, two of which were lesser included offenses of the other two, and had then pled guilty to the lesser offenses. For double jeopardy purposes, a lesser included offense is the same as the associated greater offense. *See Brown* v. *Ohio*, 432 U.S. 161, 166-68 & n.6 (1977). If jeopardy had attached when the defendant pled guilty to the lesser offenses, the Double Jeop-

---

[1]This rule is itself controversial. *See* section IV *infra* (pointing out that the circuits have split on its validity).

ardy Clause would have barred the state from prosecuting him on the two remaining charges.

However, the Supreme Court rejected this view. It emphasized that the Double Jeopardy Clause embodies two concepts, "principles of finality and prevention of prosecutorial overreaching," 467 U.S. at 501-02, and that prosecuting the defendant for the greater offenses after he pled guilty to the lesser offenses would run afoul of neither principle. Thus, the Court held, the state could try the defendant on the remaining offenses, *id.* at 501, which means that jeopardy did not attach when the trial court accepted defendant's guilty plea.

There are two important doctrinal points in *Johnson*. First, jeopardy does not *always* attach when the defendant enters a guilty plea; *Johnson* itself illustrates this point. *Cf. id.* at 500 n.9 ("[T]he taking of a guilty plea is not the same as an adjudication on the merits after full trial . . . ."). Second, the Court provided a framework—which the *Patterson II* panel ignores —for determining whether jeopardy attaches when a defendant pleads guilty. A court must consider the twin aims of the Double Jeopardy Clause: protecting a defendant's finality interests and preventing prosecutorial overreaching.

The First and Third Circuits have applied this framework in concluding that jeopardy did not attach when, as here, the district court accepted a defendant's guilty plea and then vacated it in the same proceeding. In *Gilmore* v. *Zimmerman*, 793 F.2d 564 (3d Cir. 1986), the defendant pled guilty to involuntary manslaughter, a lesser included offense of criminal homicide. The district court vacated the plea after rejecting the prosecutor's recommended sentence, and then forced the defendant to stand trial. *Id.* at 567. The *Gilmore* court recognized that *Johnson* had undermined its previous rule that jeopardy attached when the district court accepted a guilty plea:

> Like *Johnson* . . . , this case involves a single prosecution, not successive ones. . . . The fact that his plea

was stricken obviously puts him in no better position than that of a defendant whose plea remains intact. These precedents teach that the interests protected by the Double Jeopardy Clause's prohibition against successive prosecutions for the same offense simply are not implicated in the situation currently before us.

. . . .

Appellant relies most heavily on the following observation of the court in [*United States* v.] *Jerry*[, 487 F.2d 600, 606 (3d Cir. 1973) (holding that jeopardy attached when the guilty plea was accepted)]: ["]Jerry must be considered to have been convicted by the entry of his plea of guilty just as if a jury had found a verdict of guilty against him, and jeopardy therefore attached with the acceptance of his guilty plea by the district court.["] It is true that this statement, coming as it did in the context of a case involving a single prosecution, is inconsistent with the result we here reach. . . . [But] whatever value it may retain in other contexts, in light of *Ohio* v. *Johnson*, it can no longer be read to suggest that double jeopardy interests are implicated in a case like this.

793 F.2d at 569-71 (citation omitted).

The First Circuit reached the same conclusion in a similar case a year later. *See United States* v. *Santiago Soto*, 825 F.2d 616 (1st Cir. 1987). It explained:

Underlying *Johnson* is the proposition that an acceptance of a guilty plea is legally different from a conviction based on a jury's verdict. . . . In this respect, the Court seems to have overruled our [prior] double jeopardy analysis . . . .

. . . .

. . . The mere acceptance of a guilty plea does not carry the same expectation of finality and tranquility that comes with a jury's verdict or with an entry of judgment and sentence . . . . *Cf. Ricketts* v. *Adamson*, [483 U.S. 1] (1987) (assumes that jeopardy at least attaches when the defendant was *sentenced* on his guilty plea to a lesser included offense).

. . . Certainly in this case, in which the judge initially accepted the guilty plea but then rejected it within the same proceeding, defendant was not placed in jeopardy in any meaningful sense.

*Id.* at 619-20.

In this case, likewise, it is hard to see how one could apply *Johnson*'s framework and nonetheless conclude, as the panel does, that jeopardy attached when the district court accepted Patterson's guilty plea. Patterson certainly had a finality interest: He had pled guilty to the only charge against him. But this interest was relatively weak. As in *Gilmore* and *Santiago Soto*, the district judge accepted the plea and then rejected it in the same proceeding; no new charges were brought against him. More importantly, his plea agreement contemplated, and he acknowledged in his plea colloquy, that the district court would determine the number of marijuana plants after the parties litigated that issue. The number of plants involved was the key issue in determining how long Patterson stayed in prison, and it was more hotly contested than whether he manufactured marijuana at all. Had Patterson been asked after his guilty plea whether he thought his criminal proceedings were basically over, he would surely have said no: He still faced a contentious hearing on the sole issue that would make the difference between 15 years in prison and five.

As to prosecutorial overreaching, there was none. The prosecution didn't charge Patterson with a second crime after get-

ting him to plead guilty. Instead, it entered a plea agreement with Patterson in which both sides agreed that the number of plants would be determined by the district court. When *Apprendi* came down and called this approach into question, the district judge came up with a solution that allowed a jury to make this determination, and the prosecutor simply used it to prove exactly what he had set out to prove from the beginning: that Patterson had been growing 100 or more plants. The panel's conclusion that jeopardy nevertheless attached creates a square conflict with the First and Third Circuits, and with *Johnson* itself.

## III

Perhaps the panel could have dealt with *Johnson* in its opinion and nonetheless concluded that jeopardy attached. I doubt it, but the panel does not even attempt to do so. Instead, it holds that this case is controlled by *Ellis* v. *United States District Court*, 356 F.3d 1198 (9th Cir. 2004) (en banc). This is a strange view: *Ellis* didn't say anything about double jeopardy, a point even the panel recognizes. *See Patterson II*, 381 F.3d at 864-65. In fact, the *only* reference to double jeopardy in *Ellis* is in Judge Kleinfeld's dissent, where he pointed out that the case *could not have been resolved* on those grounds because of—you guessed it—*Johnson*. *See Ellis*, 356 F.3d at 1239 n.43 (Kleinfeld, J., dissenting).

*Ellis* held only that a district court does not have authority to vacate a guilty plea on its own motion because no such authority is granted in Rule 11. *See Ellis*, 356 F.3d at 1200 ("Because Rule 11 contains no provision permitting the district court itself to determine that the plea should be vacated following its rejection of the plea agreement, the district court's choice to do so here was error."). It's hard to see how any conclusion about double jeopardy flows from this, as there's no inherent connection between the district court's authority to vacate the plea and the question of when jeopardy attaches. Perhaps it bears on Patterson's finality interest—had

the panel applied *Johnson*'s analysis and considered that interest. But the panel seems to assume that *Ellis*'s holding alone dictates the result of its double jeopardy analysis.

The problem is not just that *Ellis* said nothing about the double jeopardy issue addressed in *Patterson II*; it's also that the opinions are vastly different in scope. *Ellis* was simply an interpretation of the Federal Rules of Criminal Procedure. The fact that the holding was rooted in the federal rules meant that it could be changed by amending the rules; no one questioned that a differently written rule could permit a district judge to vacate a guilty plea if he believed the sentence recommended in the plea agreement was too lenient. *See Ellis*, 356 F.3d at 1221 (Kozinski, J., concurring) ("[I]f it really turns out to be a big problem that district courts lack authority to vacate guilty pleas, the Federal Rules of Criminal Procedure can be tweaked to give them such power.").

After *Ellis*, the panel might have been justified in reversing on the theory that the district court exceeded its authority under Rule 11. By holding instead that *jeopardy attached* because the district court lacked authority to vacate defendant's plea, *Patterson II* elevates *Ellis* to a rule of constitutional law. Thus, on the panel's view, the constitutional question of when jeopardy attaches in the context of a guilty plea turns on what the federal rules say about the district court's authority to vacate the plea. This gives the rules far more weight than is due.

## IV

Our failure to take this case en banc is even more unfortunate because it leaves intact our circuit's rule that "[j]eopardy ordinarily attaches when the court accepts a plea of guilty," *Patterson II*, 381 F.3d at 864—a rule that should be reconsidered after *Johnson*.

The first appearance of this rule in our caselaw came before *Johnson*. In *United States* v. *Vaughan*, 715 F.2d 1373 (9th Cir. 1983), we held:

> Where there is neither a trial before a jury or a judge but, instead, a defendant enters a plea of guilty to one of the crimes with which he has been charged, jeopardy ordinarily attaches as to that crime upon acceptance of the plea by the court. *See United States* v. *Cruz*, 709 F.2d 111, 114-[16] (1st Cir. 1983); *United States* v. *Hecht*, 638 F.2d 651, 657 (3d Cir. 1981).

*Id.* at 1378 n.2. At the time, a number of circuits followed this approach, with some even holding that jeopardy *always* attached when the plea was accepted. *See, e.g.*, *United States* v. *Sanchez*, 609 F.2d 761, 762 (5th Cir. 1980) ("Jeopardy attaches with the acceptance of a guilty plea."); *United States* v. *Cambindo Valencia*, 609 F.2d 603, 637 (2d Cir. 1979) ("[I]t is axiomatic of the double jeopardy clause that jeopardy attached once [the] guilty plea was accepted."); *United States* v. *Bullock*, 579 F.2d 1116, 1118 (8th Cir. 1978) (per curiam) ("Of course, jeopardy would attach when a plea of guilty is accepted.").[2]

After *Johnson*, the First and Third Circuits—the two courts we relied on when we adopted the "ordinarily attaches" rule in *Vaughan*—revisited the issue. Both of them concluded that their previous rule about when jeopardy attached could not stand in view of *Johnson*. *See Santiago Soto*, 825 F.2d at 619

---

[2]One outlier was the Tenth Circuit. In *United States* v. *Combs*, 634 F.2d 1295 (10th Cir. 1980), Judge Logan concluded that jeopardy does not attach until the trial court enters judgment and a sentence on the guilty plea. *Id.* at 1298. However, this view did not command a majority of the panel: Judge McKay dissented on the issue of when jeopardy attached, *id.* at 1300-02 (McKay, J., dissenting), and the third panel member, Judge Breitenstein, found it unnecessary to decide the point, *id.* at 1299 (Breitenstein, J., concurring).

("[T]he Court seems to have overruled our double jeopardy analysis in *Cruz*."); *Gilmore*, 793 F.2d at 571 ("[W]hatever value [the old rule] may retain in other contexts, in light of *Ohio* v. *Johnson*, it can no longer be read to suggest that double jeopardy interests are implicated in a case like this."); *see also* pages 4869-71 *supra*.

Yet we have never reconsidered our own caselaw, which was based on those overruled out-of-circuit decisions. When we reiterated *Vaughan*'s rule in *United States* v. *Smith*, 912 F.2d 322, 324 (9th Cir. 1990), we didn't even hint that *Johnson* may have had some bearing on the issue. In fact, we cited as authority the First Circuit's opinion in *Cruz*—which the First Circuit had recognized as overruled *three years earlier*. *Cf. United States* v. *Cordova-Perez*, 65 F.3d 1552, 1556 n.8 (9th Cir. 1995) (noting, in a different context, that "*Cruz* has . . . been disapproved because it was influenced partly by double jeopardy concerns which are inconsistent with *Ohio* v. *Johnson*, 467 U.S. 493 (1984)").

Nor are we the only circuit that has reaffirmed a pre-*Johnson* rule about when jeopardy attaches in the context of a guilty plea without considering whether the rule remains valid. In *United States* v. *Baggett*, 901 F.2d 1546 (11th Cir. 1990), for instance, the Eleventh Circuit reaffirmed *Sanchez*'s holding that jeopardy attaches when the plea is accepted, but declined to mention *Johnson*. *Id.* at 1548 ("[W]ith respect to the offense pleaded to, jeopardy normally attaches when the court unconditionally accepts a guilty plea."); *see also, e.g.*, *United States* v. *Ursery*, 59 F.3d 568, 572 (6th Cir. 1995) ("[J]eopardy attaches to a guilty plea pursuant to a plea agreement upon the *court's acceptance* of the plea agreement."), *rev'd on other grounds*, 518 U.S. 267 (1996); *Fransaw* v. *Lynaugh*, 810 F.2d 518, 523 & n.9 (5th Cir. 1987) ("In a plea bargaining context, the rule in this Circuit with respect to the offense pleaded to is that '[j]eopardy attaches with the acceptance of a guilty plea.'" (quoting *Sanchez*, 609 F.2d at 762)

(alteration in original)).**³** *But see United States* v. *Ritsema*, 89 F.3d 392, 399 n.6 (7th Cir. 1996) ("The First Circuit's holding [in *Cruz*] was founded in limited part on the notion that jeopardy attaches to the acceptance of a guilty plea . . . . To that extent, *Ohio* v. *Johnson* is thought to have overruled *Cruz*." (citation omitted)); *Bally* v. *Kemna*, 65 F.3d 104, 107-08 (8th Cir. 1995) (noting that "several federal courts have questioned the rationale of cases holding that jeopardy attaches upon acceptance of a guilty plea," but assuming for purposes of the case "that jeopardy attached when the court accepted the guilty plea").

This confusion has filtered down to the state courts, which are likewise split on the question. *Compare, e.g.*, *State* v. *Angel*, 51 P.3d 1155, 1157-59 (N.M. 2002) (holding, citing *Johnson* and *Santiago Soto*, that jeopardy did not attach when trial court accepted a no contest plea but dismissed charges before sentencing), *with Peiffer* v. *State*, 88 S.W.3d 439, 444-45 (Mo. 2002) ("[D]ouble jeopardy attaches to a guilty plea upon its unconditional acceptance." (citing *Fransaw*, 810 F.2d at 523)), *and State* v. *McAlear*, 519 N.W.2d 596, 599 (S.D. 1994) ("In the case of a plea bargain, jeopardy attaches when the court accepts the guilty plea." (citing *Fransaw*, 810 F.2d at 523)).

*Patterson II* provided an opportunity for us to finally consider what *Johnson* has to say about when jeopardy attaches. This is a recurring issue, and everyone involved—

---

**³***Johnson*'s relevance did not escape a later Fifth Circuit panel, which recognized that "the Supreme Court's . . . decision in *Ohio* v. *Johnson* has been regarded by the First Circuit as effectively rejecting the double jeopardy concerns expressed in *Cruz*," a point on which it cited, and agreed with, *Santiago Soto*. *United States* v. *Foy*, 28 F.3d 464, 471 n.13 (5th Cir. 1994) (citation omitted). However, *Foy*, which was not a double jeopardy case, did not reconsider *Fransaw*'s double jeopardy holding, and later cases have ignored *Foy* (and *Johnson*) in concluding that jeopardy attached when the trial court accepted a defendant's guilty plea. *See, e.g.*, *United States* v. *Bond*, 87 F.3d 695, 699 (5th Cir. 1996).

prosecutors, defense attorneys and defendants—would have benefitted from the thorough treatment of the issue that we could have provided had we gone en banc. So far, our only contribution has been to ignore *Johnson*. We should do better.

KLEINFELD, Circuit Judge, with whom GOULD and TALL-MAN, Circuit Judges, join, dissenting from denial of rehearing en banc:

I respectfully dissent from denial of rehearing en banc.

The error that we need to correct was made, not by the panel in this case, but by our en banc decision in *Ellis v. United States District Court*.[1] The panel in this case correctly noted[2] that the *Ellis* en banc decision overturned the established circuit law, *United States v. Cordova-Perez*,[3] which had been followed by the three-judge panel in *Ellis*. While perhaps the panel should have read the Supreme Court's decision in *Ohio v. Johnson*[4] as limiting the logic of *Ellis*, I think that the panel in the case at bar correctly read *Ellis* as taking us on a course that made such a limitation difficult.

*Ellis*, though, was wrong. In our en banc decision, we let a prosecutor and defendant bind a court to a second degree murder conviction. The district court had tried to vacate the plea because the presentence report showed that the crime was a cold-blooded, premeditated, thrill killing — as clear a first degree murder as there could be. We rejected the district court's decision based on a misreading of a Supreme Court decision that had reversed us in quite a different context,

[1] *Ellis v. United States Dist. Court*, 356 F.3d 1198 (9th Cir. 2004) (en banc).

[2] *United States v. Patterson*, 381 F.3d 859, 864-65 (9th Cir. 2004).

[3] *United States v. Cordova-Perez*, 65 F.3d 1552 (9th Cir. 1995).

[4] *Ohio v. Johnson*, 467 U.S. 493 (1984).

*United States v. Hyde*.[5] Now we continue down the mistaken path we chose in the *Ellis* en banc.

I thought that the district court judge was right in *Ellis*, and explained why in the repudiated panel opinion in that case.[6] And I explained why the en banc decision was mistaken in my dissent from the en banc decision in *Ellis*.[7] My reasoning is in print and need not be repeated here.

Now we reap what we sowed in *Ellis*. Again a defendant ties the court into needless knots, preventing a just resolution of the case that would take into account the defendant's actual conduct. I would have taken this case en banc to correct the mistake we made in the *Ellis* en banc decision, and its consequence in this case.

---

[5]*United States v. Hyde*, 520 U.S. 670 (1997).

[6]*Ellis v. United States Dist. Court*, 294 F.3d 1094 (9th Cir. 2002), *vacated*, 313 F.3d 1094 (9th Cir.), and *superseded*, 356 F.3d 1198 (9th Cir. 2004).

[7]*Ellis*, 356 F.3d at 1228-41 (Kleinfeld, J., dissenting).

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2005 Thomson/West.